IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COREY BRACEY, | |
| Plaintiff, | Civil Action No. 09-1662 |
| v. | Magistrate Judge Maureen P. Kelly |
| LIEUTENANT PRICE; Correctional Officer I EAGLE; Captain WORKMAN; Captain LEGGET; Correctional Officer II BITTNER; Lieutenant LESURE; Correctional Officer II ANDERSON; KERRI CROSS; Deputy GATES; Correctional Officer II BRAUNLICH; MELISSA VARNER; ROBERT MacINTYRE; JEFFREY BEARD; and BRIAN COLEMAN, | |
| Defendants. | Re: ECF No. [39] |

## MEMORANDUM OPINION AND ORDER

Corey Bracey ("Plaintiff") is a prisoner of the Commonwealth of Pennsylvania ("State"), who initiated this civil rights action in December, 2009. ECF No. [1]. In the operative Complaint, Plaintiff complained about an alleged campaign of retaliation for filing complaints against correctional officers. He also complained about the conditions of his confinement. He alleged that this campaign of retaliation and his poor conditions of confinement continued from December 13, 2007, until sometime after March 2010. ECF No. [35]. Plaintiff alleged that Defendants began to violate his rights when he was at the State Correctional Institution at Greene ("SCI-Greene") and, that the violations continued even after he was transferred to the State Correctional Institution at Fayette ("SCI-Fayette"). Plaintiff named thirteen Defendants in the operative Complaint. Some of the Defendants worked at SCI-Greene, some worked at SCI-Fayette and some worked in the central administrative offices of the Pennsylvania Department of Corrections ("DOC"). Defendants, all of whom are represented by the Pennsylvania Attorney

General's Office, have filed a partial Motion to Dismiss, which is granted in part and denied in part.

First, Plaintiff's claims arising before December 16, 2007, are time-barred, and, as a result, these claims are dismissed. Second, all of Plaintiff's Sixth Amendment claims are dismissed because Plaintiff's Complaint does not involve any criminal proceedings. Third, because Plaintiff fails to state a Section 1983 claim against DOC or Defendant Jeffrey Beard ("Beard"), in his official capacity, all federal claims against them are dismissed. However, the Motion to Dismiss is denied as to the state law claim of conversion. Fourth, the Motion to Dismiss is denied as to Plaintiff's Fourth Amendment claim of gratuitously viewing him in the nude. Fifth, the Motion to Dismiss is granted as to Plaintiff's procedural due process claim against Defendant Kerri Cross ("Cross") but is denied as to Plaintiff's retaliation claim against her. Sixth, the Motion to Dismiss is granted as to the federal claims against Defendants Melissa Varner ("Varner"), Brian Coleman ("Coleman") and Robert MacIntyre ("MacIntyre") because they lack personal involvement in the alleged constitutional wrongs. Lastly, pursuant to the screening provisions of the Prison Litigation Reform Act ("PLRA"), the Court *sua sponte* dismisses the federal claims against Defendants Gates, Beard, and Braunlich.

## A. Relevant Procedural History

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Plaintiff filed a Complaint, ECF No. [3], an amended Complaint, ECF No. [9], and a supplemental/amended Complaint, ECF No. [35], which is the operative Complaint. The operative Complaint invokes 42 U.S.C. § 1983 as a jurisdictional basis, alleging violations of Plaintiff's constitutional rights. In addition, the operative Complaint also invokes this court's supplemental jurisdiction over a state law tort claim, concerning the destruction of his property. Defendants filed a partial Motion to Dismiss

2

pursuant to Fed.R.Civ.P. 12(b)(6), ECF No. [39], and a Brief in Support. ECF No. [40]. Plaintiff filed a response. ECF No. [42]. All parties have consented to the exercise of plenary jurisdiction by the Magistrate Judge. ECF Nos. [4]; [15] & [49].

## B. Applicable Legal Standard

As the United States Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Under this standard, the court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), *amended by*, 275 F.3d 1187 (9th Cir. 2001). Nor must a court accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). A court also need not accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In addition, because Plaintiff is a prisoner proceeding IFP, who seeks redress from a governmental entity or an employee of a governmental entity, and who has filed a civil action concerning the conditions of confinement, the screening provisions of 28 U.S.C. §§ 1915(e) and

3

1915A and 28 U.S.C. § 1997e(c) apply. Pursuant to these screening provisions, a court is obliged to *sua sponte* dismiss complaints that are frivolous, malicious or that fail to state a claim upon which relief can be granted. Moreover, if there is a ground for dismissal, which was not relied upon by a defendant in a motion to dismiss, or, if a defendant did not even file a motion to dismiss, the court may nonetheless dismiss the case or claim *sua sponte*, pursuant to the screening provisions of the PLRA. See Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000); Dare v. U.S., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), *aff'd*, 264 F.App'x 183 (3d Cir. 2008).

**Discussion**

1. Statute of Limitations

Defendants raise the statute of limitations defense, pointing out that because Plaintiff filed his Complaint no earlier than December 16, 2009, pursuant to the prisoner mail-box rule,[1] any claims arising prior to December 16, 2007, are time-barred, including the claim that on December 13, 2007, Defendant Anderson sexually harassed Plaintiff in the conducting of a strip search. ECF No. [40] at 6 to 7.

Congress did not specify a statute of limitations for actions arising under 42 U.S.C. §

---

[1] The "prisoner mail box rule" provides that a *pro se* prisoner's complaint is "deemed filed at the moment he delivers it to prison officials for mailing to the district court." Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (dealing with habeas petitions); Casanova v. DuBois, 304 F.3d 75, 79 (1st Cir. 2002) (applying rule to civil rights complaint). In the absence of evidence as to when Plaintiff gave his Section 1983 complaint to the prison authorities for mailing, the court may deem, for purposes of applying the prisoner mail box rule, the complaint to have been filed on the date Plaintiff signed his IFP application and/or complaint. Cromwell v. Keane, 27 F.App'x 13, 14 (2d Cir. 2001) ("In the absence of other evidence regarding the date on which Cromwell's petition was handed to prison officials for mailing, we consider his petition to have been filed on September 2, 1997, the date on which petitioner signed his *in forma pauperis* application. *See Rhodes v. Senkowski*, 82 F.Supp.2d 160, 165 (S.D.N.Y. 2000) (collecting cases).").

4

1983. Wilson v. Garcia, 471 U.S. 261, 267 (1985), *superseded by statute as recognized in,* Kasteleba v. Judge, 325 F.App'x. 153, 156 (3d Cir. 2009). Because of this, the courts are to consider Section 1983 actions as tort actions and borrow the statute of limitations for personal injury or tort actions from the appropriate state. See Wilson. The Court of Appeals for the Third Circuit has declared that for Section 1983 actions brought in the federal courts located within the Commonwealth of Pennsylvania, the appropriate statute of limitations is two years. Fitzgerald v. Larson, 769 F.2d 160, 162 (3d Cir. 1985) ("the two-year Pennsylvania limitation for personal injury actions of 42 Pa.Const.Stat.Ann. § 5524 governs all § 1983 actions brought in Pennsylvania."). The statute of limitations requires that a complaint be filed between the time the cause of action accrues and the time when the limitations period runs out. See Sprint Communications Co., L.P. v. F.C.C., 76 F.3d 1221, 1226 (D.C. Cir. 1996).

In response to the Defendants' argument that the two year statute of limitations bars Plaintiff's claims against Defendant Anderson concerning the alleged sexual harassment that occurred on December 13, 2007, Plaintiff's sole argument is his invocation of the "continuing violation" doctrine. ECF No. [42] at 3 to 4.

As succinctly explained by the Court of Appeals for the Third Circuit:

> The continuing violations doctrine is an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern **that has only become cognizable as illegal over time.** Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters, 927 F.2d 1283, 1295 (3d Cir.1991).

Foster v. Morris, 208 F.App'x 174, 177-78 (3d Cir. 2006) (emphasis added). However, the rule is clear that where a potential plaintiff is aware of the injury or wrongdoing, at the time the

5

wrongful actions were taken, then the continuing violation doctrine is not applicable. See, e.g., Zied v. Barnhart, __ F.App'x __, 2011 WL 913199, at *4 (3d Cir. March 17, 2011) ("as explained by the District Court, the continuing violations doctrine for extending a statute of limitation does not apply to injuries that occurred before the filing period if the plaintiff was aware, as Zied was, of those injuries at the time they occurred."); Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 417 n.6 (3d Cir. 2003) ("Plaintiffs also assert that the continuing violation theory tolls the statute of limitations. However, this theory does not apply when plaintiffs are aware of the injury at the time it occurred. The Morganroths successfully contested the transfer of Lamington Farm to Genesis during the Michigan action, demonstrating that they were aware of the injury at the time and precluding resort to the continuing violation theory of tolling.") (citations omitted).

Here, Plaintiff was clearly aware of the constitutional injury he allegedly suffered at the hands of Defendant Anderson on December 13, 2007, the date that Defendant Anderson allegedly sexually harassed him in the course of a strip search. See, e.g., ECF No. [35] at 3, ¶¶ 21 to 23 ("During the search Defendant Anderson ordered Plaintiff several times to bend over while laughing, making comments as to the shape and size of Plaintiff's anus and buttock . . . Plaintiff was humiliated and embarrassed at the sexual harassment and refused to continue bending over . . . . Plaintiff immediately filed a grievance—clearly stating on the official form, 'I am grieving sergeant Anderson's aggressive and sexual behavior. . .'") (some internal quotation marks omitted). The fact that Plaintiff was immediately aware of the wrongdoing at the time of Anderson's alleged actions, as evidenced by Plaintiff's filing of a grievance, renders the continuing violation doctrine unavailable to Plaintiff to save his claims against Defendant Anderson from being barred by the statute of limitations. See, e.g., Seawright v. Greenberg, 233

F.App'x 145, 149 (3d Cir. 2007) ("In her complaint, Seawright alleges that her attorney complained to the judges in the prior proceedings about the defendants' behavior. Thus, Seawright was aware of issues that she could have complained of previously, and indeed did complain of, and she may not use the continuing violations doctrine to avoid the application of the statute of limitations"); Hare v. Potter, 220 F.App'x 120, 134 (3d Cir. 2007) ("Hare also argues her sexual harassment claim against McCullough should be saved by the continuing violations doctrine. She argues his conduct should be viewed as part of a series of continuing hostile work environment violations, including Hare's poor treatment by her managers after she began pressing her claim. We disagree. Hare was immediately aware of her being sexually harassed, and, consequently, the continuing violations doctrine does not apply."). Hence, the claim against Defendant Anderson is dismissed as time barred and Defendants' partial Motion to Dismiss is granted as to this claim.

2. Sixth Amendment

Defendants also move to dismiss Plaintiff's Sixth Amendment claims for failure to state a claim. ECF No. [40] at 8. Plaintiff concedes that he cannot state a Sixth Amendment claim. ECF No. [42] at 6. The Sixth Amendment has no applicability here. United States v. Ward, 448 U.S. 242, 248 (1980) ("the protections provided by the Sixth Amendment are available only in 'criminal prosecutions.'"). Hence, the partial Motion to Dismiss is granted as to Plaintiff's Sixth Amendment claims.

3. DOC is not a Person

In order to establish a Section 1983 cause of action, a plaintiff must sufficiently allege: 1) that there was a person acting under color of state law; 2) whose actions under color of state law caused him/her to be deprived of rights, privileges, or immunities secured by the

7

Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988).

Plaintiff sued Defendant Beard, the former DOC Secretary, in his official capacity, as well as, in his individual capacity.[2] ECF No. [35] at 2, ¶ 15. Plaintiff also apparently intended to sue DOC itself, even though DOC was not named in the caption of the operative Complaint. Id. at 3, ¶ 19 ("Pennsylvania Department of Corrections is sued in their individual capacities."). Defendants point out that DOC, and, inferentially, Beard, in his official capacity, do not constitute a "person" as is required under Section 1983. Defendants are correct. Poole v. D.O.C., 153 F.App'x 816, 818-19 (3d Cir. 2005) ("states, state agencies, and state officials acting in their official capacities are not 'persons' subject to suit under 42 U.S.C. § 1983") (citing Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)).

Plaintiff, in his response, concedes that DOC is not a person for purposes of Section 1983 but then goes on to say that Defendants have misconstrued Plaintiff's claims. ECF No. [42] at 4. Plaintiff is wrong about the Defendants misconstruing his claims insofar as Plaintiff did include Section 1983 claims against Defendant Beard in his official capacity and such claims are barred under Will v. Michigan, given that Defendant Beard, in his official capacity, does not constitute a "person" for Section 1983 purposes. However, Plaintiff does go on to clarify that he is suing DOC under "state tort liability for the acts of its employees in illegally confiscating Plaintiff's legal materials[,]" which Plaintiff calls "conversion." Id.

Defendants contend that Plaintiff's state law claim of "conversion" is barred by the sovereign or governmental immunity Act found at 42 Pa. Cons. Stat. Ann. § 8522. ECF No. [40] at 7 to 8. This statute generally reaffirms that the Commonwealth and Commonwealth parties enjoy sovereign immunity from suit, but that such immunity is waived in nine enumerated

---

[2] Plaintiff's claims against Defendant Beard in his individual capacity are addressed below.

8

instances. Defendants contend that conversion does not fall within any of the exceptions. Id. at 8. Plaintiff however, points out that there is an exception to immunity for the "care, custody or control of personal property"[3] and argues that his claim regarding his legal property falls within this exception. The Defendants did not file a reply and there is no apparent reason why Plaintiff's claim regarding his property does not come within the plain language of the exception. See, e.g., Bonds v. Rhodes, No. 2:05CV241, 2006 WL 1617892, at *4 (W.D. Pa. June 8, 2006) ("Bond's conversion [claim] remains viable at this juncture because it comes within an exception to the Sovereign Immunity statute. 42 Pa. Cons. Stat. Ann. § 8522(b)(3)."). Thus, the Defendants' partial Motion to Dismiss is denied to the extent that it sought dismissal of Plaintiff's state law tort claim regarding his legal property.

4. Fourth Amendment

Next, Defendants move to dismiss Plaintiff's Fourth Amendment claims. Defendants construe Plaintiff's Complaint as complaining about the search of his cell and the seizure of some of his property as being violative of the Fourth Amendment and point out that such claims fail to state a Fourth Amendment claim. ECF No. [40] at 9. If Defendants' construction of the

---

[3] 42 Pa. Cons.Stat. Ann. § 8522(b)(3) provides in relevant part as follows:

> (b) Acts which may impose liability.-The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> ...
> (3) Care, custody or control of personal property.-The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency....

9

operative Complaint were correct, they would be entitled to dismissal of any such Fourth Amendment complaint. However, their construction of the operative Complaint is not correct.

Plaintiff explains, in his response, that his Fourth Amendment claims are not based on such cell searches and seizures of his property. Plaintiff explains that his Fourth Amendment claims are based on his placement in the psychiatric observation cell in the nude where there were cameras on 24 hours a day, which permitted him to be viewed going to the bathroom and taking showers and, importantly, the contention that his placement in such cell was without penological justification. Defendants have not argued that this factual allegation fails to state a claim under the Fourth Amendment. Hence, the Motion to Dismiss will be denied as to Plaintiff's Fourth Amendment claim. See, e.g., Canedy v. Boardman, 16 F.3d 183, 185 (7th Cir. 1994) ("all forced observations or inspections of the naked body implicate a privacy concern").

5. Defendant Kerri Cross

Next, Defendants move to dismiss Plaintiff's procedural due process claim against Defendant Cross. ECF No. [40] at 9 to 10. Plaintiff concedes that he does not have a procedural due process claim against Defendant Cross. ECF No. [42] at 7 ("Plaintiff does not dispute the 14th Amendment being inapplicable as relevant to the actions of Cross."). Accordingly, any procedural due process claim against Defendant Cross is dismissed.

Defendants also move to dismiss Plaintiff's First Amendment retaliation claim against Defendant Cross. ECF No. [40] at 10. Defendants claim that the operative Complaint failed to allege that Cross's finding Plaintiff guilty of a misconduct charge was retaliatory. Id. ("Although Plaintiff claims that Cross violated his 1st [sic] Amendment rights as well, no where [sic] does he claim that Cross retaliated against him by finding him guilty."). Plaintiff responds that, reading the operative Complaint in a light most favorable to him and, given the liberality accorded to *pro*

*se* plaintiffs, the operative Complaint sufficiently alleged Defendant Cross retaliated against Plaintiff. More specifically, Plaintiff points to the allegation that Defendant Cross said to Plaintiff at the misconduct hearing, "maybe you shouldn't have filed a grievance" and "besides you're just a prisoner." ECF No. [42] at 8. Plaintiff points to these allegations as permitting an inference that Defendant Cross believed that Plaintiff was being retaliated against by Defendant Bittner's filing of a false misconduct charge and that Defendant Cross, in further retaliation, found Plaintiff guilty of the misconduct, even though she believed Plaintiff was not guilty. See, e.g., ECF No. [35] at 8 to 9, ¶ 79 (referencing "the biased decision of Kross [sic]"). While a close call, the Court agrees that, in light of Plaintiff's *pro se* status and, giving him the benefit of all reasonable inferences, the operative Complaint adequately alleges that Defendant Cross retaliated against Plaintiff by her finding him guilty of the allegedly false misconduct charge. Hence, Plaintiff's First Amendment retaliation claim against Defendant Cross survives the partial Motion to Dismiss.

6. Personal Involvement

In their final argument, Defendants contend that Plaintiff insufficiently pleaded the personal involvement of the following Defendants in the alleged violation of Plaintiff's rights: Varner, Coleman, MacIntyre, Gates and Beard. ECF No. [40] at 10 to 12.

The general rule in Section 1983 cases, such as this one, is that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Plaintiff concedes that he cannot plead the requisite personal involvement of Defendants Varner, Coleman and MacIntyre. ECF No. [42] at 8 ("Plaintiff does not contest the lack of

11

personal involvement of Defendants Varner, Coleman, and Macintyre."). Accordingly, Defendants' partial Motion to Dismiss is granted with respect to Plaintiff's Section 1983 claims against Defendants Varner, Coleman and MacIntyre. The sole remaining claim against these three Defendants is the state law tort of conversion. ECF No. [35] at 11, ¶ 96.

7. <u>PLRA Screening</u>

Plaintiff argues that with respect to Defendant Gates, the operative Complaint sufficiently alleges his personal involvement insofar as it alleges that Defendant Gates ordered the destruction of all six of Plaintiff's legal books whereas Defendant Cross had only ordered the destruction of three of Plaintiff's legal books and that Defendant Gates ordered the destruction of the additional three books without any penological interest, justifying such destruction.

We may assume that Plaintiff's explanation regarding Defendant Gates satisfies the "personal involvement" requirement for Section 1983 claims. However, to the extent that Plaintiff would complain about the mere confiscation of his six books, such fails to state a procedural due process claim as a matter of law, given the presence of adequate state post-deprivation remedies in the form of, *inter alia*, a state law tort action. See Dantzler v. Beard, NO. CIVA 09-275, 2010 WL 1008294, at *8 to *9 (W.D.Pa., March 15, 2010). To the extent Plaintiff complains about the destruction of all six books, Plaintiff had adequate pre-deprivation process in the form of the grievance appeal system because he had notice of the intended destruction of all six of the books via Defendant Gates' decision and the opportunity to be heard via an appeal from Defendant Gates' decision to destroy all six of the books. This pre-deprivation/pre-destruction remedy was in addition to having a post deprivation/destruction remedy in the form of a state law tort suit. See id. Hence, Plaintiff cannot state a procedural due process claim against Defendant Gates.

12

To the extent that Plaintiff may be attempting to make a retaliation[4] claim against Defendant Gates, i.e., Defendant Gates ordered the destruction of the three additional law books to retaliate against Plaintiff for his filing of grievances, the operative Complaint fails to make any plausible allegations of retaliation against Defendant Gates. See, e.g., ECF No. [35] at 9, ¶¶ 80-85 (noting that Defendant Gates ordered the destruction of all six books, even though only three were the subject of the misconduct hearing); id., at 11, ¶ 98 (alleging Defendant Gates' actions violated Plaintiff's First, Sixth and Fourteenth Amendment rights). Even in his response, Plaintiff does not allege that Defendant Gates took the action of ordering the destruction of all six books in order to retaliate against Plaintiff for any exercise of Plaintiff's rights. See, e.g., ECF No. [42] at 8 to 9. The most that Plaintiff alleges is "Plaintiff informed Gates that the books were confiscated in furtherance of retaliation and [Plaintiff] could prove the books were indeed his property if given the opportunity." Id., at 9. However, the mere fact that Plaintiff alleged, in his grievance appeal to Defendant Gates, that the books were confiscated in furtherance of retaliation does not thereby mean that Defendant Gates' denial of Plaintiff's grievance appeal and his ordering the destruction of all six of the books, was itself an act of retaliation against Plaintiff. See Bowman v. Mazur, No. CIV.A. 08-173J, 2010 WL 2606291, at *5 (W.D.Pa. June 4, 2010) ("A prison guard, need not credit every assertion of a prisoner on pain of committing a constitutional tort"). Because the operative Complaint lacks any allegations regarding Defendant

---

[4] In order to state a retaliation claim, a plaintiff must sufficiently allege: (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the constitutionally protected activity was a substantial motivating factor in the state actor's decision to take adverse action. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) (citing Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)). Furthermore, in order to demonstrate the second prong of adverse action, Plaintiff must allege an action sufficiently negative to "deter a prisoner of ordinary firmness from exercising his First Amendment rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

Gates engaging in retaliation, any such claim must be dismissed with prejudice, given that Plaintiff has already amended his Complaint several times, and any further amendment would be futile or inequitable. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (district courts must extend plaintiffs an opportunity to amend before dismissing a complaint, unless amendment would be inequitable or futile). Hence, the only remaining claim against Defendant Gates is the state law tort of conversion. See ECF No. [35] at 11, ¶ 97.

Lastly, Defendants claim that Plaintiff inadequately alleged the personal involvement of Defendant Beard. Plaintiff, in his response, argues that he alleged Defendant Beard promulgated a policy that prohibits prisoners from possessing affidavits or information from/about other prisoners, even if such affidavits are needed for a particular prisoner's litigation activities.[5] Plaintiff contends that this is sufficient "personal involvement" and he claims that Beard's promulgation of the policy violated Plaintiff's First, Sixth and Fourteenth Amendments. ECF No. [35] at 11, ¶ 98. We need not decide this question because we find that Plaintiff cannot show that the promulgation of the alleged policy violated any of Plaintiff's rights. See, e.g., Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D.Pa. 2003) (to "make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff must also establish that it was the acts of the defendant which caused the constitutional deprivation.").

To the extent that Plaintiff claims the alleged policy violated Plaintiff's Sixth Amendment rights, Plaintiff has already conceded he has no Sixth Amendment claim. Hence,

---

[5] We assume that Plaintiff is suing Defendant Beard in his individual capacity for the promulgation of the policy, in addition to, suing Beard in his official capacity. See, e.g., ECF No. [35] at 2, ¶ 15 (naming Beard in "his individual and official capacity.").

14

the Sixth Amendment claim is dismissed.

To the extent that Plaintiff claims that Beard's promulgation of the policy violated Plaintiff's procedural due process rights, Plaintiff is wrong as a matter of law. Procedural due process is applicable to adjudicative kinds of acts and not to legislative policy making type acts. Marshall v. Sawyer, 365 F.2d 105, 111 (9th Cir. 1966). In Marshall, the court explained that

> [p]rocedural due process requires that when, as a premise for administrative [*i.e.*, adjudicative] action, an agency of government makes a determination of adjudicative facts, one who has a sufficient interest or right at stake shall be afforded an evidentiary hearing before the agency.... "Adjudicative facts are facts about parties and their activities, businesses, and properties, usually answering the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case...."

Id. (*quoting* Kenneth Culp Davis, The Requirement of a Trial-Type Hearing, 70 Harv.L.Rev. 193, 199 (1956)). See also County Line Joint Venture v. City of Grand Prairie, Texas, 839 F.2d 1142, 1144 (5th Cir. 1988), *cert. denied*, 488 U.S. 890 (1988) ("Generally, if the court views the governmental conduct as legislative, the property owner has no procedural due process rights."); Provost v. Betit, 326 F. Supp. 920, 923 (D.Vt. 1971) (distinguishing between legislative action and judicial action whereas judicial action constitutionally requires procedural due process, legislative action does not). Here, it is clear that defendant Beard's actions in allegedly promulgating the policy was a legislative policy making type of action which did not require an adjudicative fact finding to which procedural due process strictures apply. Thus, defendant Beard's acts in allegedly promulgating the policy did not deprive Plaintiff of a liberty/property interest without affording him procedural due process because Plaintiff was not entitled to any individualized process in defendant Beard's actions in considering and promulgating that policy. See Traweek v. City and County of San Francisco, 659 F. Supp. 1012, 1029 (N.D. Cal. 1984)

15

("the Due Process Clause does not grant to members of the public generally a right to be heard by legislative or administrative bodies making decisions of policy."), *affirmed in part and vacated in part*, 920 F.2d 589 (9th Cir. 1990). Thus, Plaintiff's procedural due process claim fails as a matter of law.

Hence, there appears to be only one remaining federal law claim against Defendant Beard. The operative Complaint only elaborated on one federal right of Plaintiff's that was violated by the alleged policy, *i.e.*, his First Amendment right of access to the Courts. See, e.g., ECF No. [35] at 9, ¶ 85 ("The malicious confiscation of Plaintiff's legal materials has hindered, stymied, and effectively interfered with Plaintiff's ability to assert his rights as a pro se Plaintiff in this civil action."). Specifically, Plaintiff complains that a declaration from another prisoner was confiscated and destroyed and that this declaration related to Plaintiff's unsanitary cell condition claim and, apparently, the related First Amendment retaliation claim, i.e., Plaintiff was purposely placed in the unsanitary cell in order to retaliate against him. We find Plaintiff's claim that Defendant Beard's promulgation of the policy insufficient to state a First Amendment denial of access to courts claim.

Plaintiff has failed to state a First Amendment claim of denial of access to courts because he has not sufficiently pleaded any "actual injury" to a lawsuit as is required in order to state a First Amendment denial of access case. The court finds the case of Christopher v. Harbury, 536 U.S. 403 (2002) to require dismissal of this claim. In Christopher, the Supreme Court explained requirements for making a denial of access to courts claim, which includes a requirement that a plaintiff allege an actual injury to a non-frivolous suit. The Supreme Court explained that as part of the pleading requirement to demonstrate actual injury caused by the official actions, the plaintiff must plead that she has actually lost the opportunity to litigate that which she desired to

16

litigate in the suit which was blocked by the official action. The Court explained that "the complaint must identify a remedy that may be awarded as recompense [for the blocked suit] but not otherwise available in some suit that may yet be brought." Id. at 415. In other words, if the claims in the blocked suit may yet be brought, there is no sense in litigating an access to courts claim because no actual injury was suffered if the claims in the blocked suit could still be brought.

While Plaintiff tries to meet this requirement, he fails. Plaintiff claims that the policy-driven confiscation of the declaration "interfered with Plaintiff's ability to assert his rights . . . in this civil action." ECF No. [35] at 9, ¶ 85. However, Plaintiff is presently litigating his two claims in this very lawsuit. He has not been shut out of court as to his claims of unsanitary cell conditions and/or the related retaliation claim, both of which were subjects of the allegedly destroyed declaration. These two claims are not being dismissed and Plaintiff will be permitted to move forward with them. Accordingly, Plaintiff's First Amendment denial of access to courts claim is hereby *sua sponte* dismissed pursuant to the screening provisions of the PLRA.[6]

Lastly, the Court notes that the Plaintiff complains that Defendant Braunlich gave Plaintiff an intentionally vague receipt for the items that Defendant Bittner ordered confiscated and that this violated Plaintiff's federal rights. The receipt for the confiscated property listed the property as "(4) soft back books[;] (1) hard back; (1) piece of paper with 'inmate name and information' on it (declaration)." ECF No. [35] at 7, ¶ 67. See also id at 11, ¶ 95. Such a claim fails as a matter of law to state a claim under Section 1983 because there simply is no constitutional right to a receipt for confiscated property, yet alone, a confiscation receipt for

---

[6] This same reasoning would dispose of any First Amendment denial of access to courts claim against Defendant Gates and any and all other Defendants.

17

property that possesses any certain level of specificity. See, e.g., Parkhurst v. Ruettgers, 974 F.2d 1345 (Table), 1992 WL 219042, at *1 n.2 (10th Cir. 1992) ("We assume as true Parkhurst's allegations that Ruettgers failed to follow the prison's own rule, as provided in an inmate handbook, requiring receipts for all confiscated material. Although the Supreme Court's decision in *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by, Thornburgh v. Abbott*, 490 U.S. 401 (1989), imposes certain procedural safeguards on the confiscation of prisoner mail, the issuance of written receipts is not one of them. Because whatever grievance Parkhurst may have regarding receipts is not of constitutional proportions, a § 1983 claim is not the proper vehicle for its redress."); Ladd v. Davies, No. 90-3279, 1990 WL 203121, at *1 (D.Kan. 1990, Nov. 7, 1990) (granting motion to dismiss where prisoner alleged, *inter alia*, "that defendants did not give him a receipt for the confiscated peanuts as required by written prison policy"). The only remaining claim against Defendant Braunlich is a state law claim for conversion. ECF No. [35] at 11, ¶ 95.

Accordingly, in light of the foregoing, Defendants' partial Motion to Dismiss is GRANTED IN PART and DENIED IN PART. It is GRANTED as to the claims against Defendant Anderson for allegedly sexually harassing Plaintiff when he conducted a strip search of Plaintiff on December 13, 2007 and that claim is dismissed with prejudice. It is GRANTED as to any Section 1983 claims against DOC and Defendant Beard, in his official capacity and those claims are dismissed with prejudice. It is GRANTED as to any Sixth Amendment claims, which are dismissed with prejudice. It is GRANTED with prejudice as to any procedural due process claim against Defendant Cross but is DENIED as to Plaintiff's First Amendment retaliation claim against Defendant Cross. It is GRANTED with prejudice as to any federal law claims against Defendants Varner, Coleman and MacIntyre because Plaintiff cannot allege their

18

personal involvement. The Court *sua sponte* dismisses, with prejudice, 1) all federal law claims against Defendant Gates for any potential procedural due process claim and any potential retaliation claim; 2) all federal law claims against Defendant Beard, in his personal capacity, for allegedly promulgating a policy, barring prisoners from having declarations of other inmates; and 3) all federal law claims against Defendant Braunlich. The partial Motion to Dismiss is DENIED as to any Fourth Amendment invasion of privacy claims in connection with viewing Plaintiff nude in his cell and as to Plaintiff's state law claim of conversion.

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Date: July 1, 2011

cc: COREY BRACEY
GS 4754
SCI Smithfield
Box 999, 1120 Pike Street
Huntingdon, PA 16652

All Counsel of Record via CM-ECF