IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY BRACEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-1662 |
| | ) | Magistrate Judge Maureen P. Kelly |
| LIEUTENANT PRICE; DAN DAVIS; | ) | |
| EAGLE, Correctional Officer I; CAPTAIN | ) | |
| WORKMAN; CAPTAIN LEGGET; | ) | |
| BITTNER, Correctional Officer II; | ) | [ECF No. 82] |
| LIEUTENANT LESURE; ANDERSON, | ) | |
| Correctional Officer II; KERRI CROSS; | ) | |
| DEPUTY GATES; BRAUNLICH, | ) | |
| Correctional Officer II; MELISSA | ) | |
| VARNER; MACINTYRE; JEFFREY | ) | |
| BEARD, Pa Department of Corrections; | ) | |
| BRIAN COLEMAN, | ) | |
| Defendants. | ) | |

## OPINION

**KELLY, Magistrate Judge**

Plaintiff Corey Bracey ("Plaintiff" or "Bracey"), an inmate presently incarcerated at the

State Correctional Institution at Smithfield, commenced this civil action pursuant to the Civil

Rights Act of 1871, 42 U.S.C. § 1983, against various officers and employees at the State

Corrections Institutions at Greene and Fayette ("SCI – Greene" and "SCI – Fayette") for the

alleged violation of his rights under the United States Constitution and the laws of the

Commonwealth of Pennsylvania.  Defendants have filed a Motion for Summary Judgment [ECF

No. 82] as to those claims remaining after this Court's disposition of Defendants' Partial Motion

to Dismiss [ECF Nos. 39, 50].  Defendants and Plaintiff have filed memoranda of law, concise

statements of undisputed facts, and exhibits in support and in opposition to the pending motion, which is ripe for review. For the following reasons, the Motion for Summary Judgment [ECF No. 82] is granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is proceeding *pro se* and *in forma pauperis*.  He filed a Complaint [ECF No. 3], an Amended Complaint [ECF No. 9], and a Supplemental/Amended Complaint [ECF No. 35], which is the operative Complaint.  Defendants filed a partial Motion to Dismiss [ECF No. 39], resulting in the dismissal of several Defendants and claims that were barred by the applicable statute of limitations or that failed to state a cause of action for which relief could be granted. [ECF No. 50].

Plaintiff alleges in the operative Amended Complaint that in the course of his incarceration at two separate facilities, Defendants retaliated against him for filing a grievance in December 2007 against Corrections Officer Sergeant Anderson ("Sergeant Anderson").  The grievance, which is no longer at issue in this action, alleges that Sergeant Anderson sexually harassed Plaintiff by asking him to bend over twice in the course of a strip search so his buttocks and anus could be checked for contraband.  The grievance also alleged that Sergeant Anderson made inappropriate remarks to Plaintiff in the course of the search.

The investigation of the grievance was conducted by Defendant Lieutenant Price ("Price"), who concluded that the repeated request to bend over was necessitated by Plaintiff's failure to cooperate as required for Plaintiff's trip to the prison library. [ECF No. 89-1, p. 2].  In addition, Price's investigation revealed that Plaintiff made vulgar remarks and sexual comments and gestures implying Sergeant Anderson's affinity for strip searches.  During the course of

Price's investigation, Plaintiff admitted he was "having a bad day" and further admitted he was in the wrong. Id.

Plaintiff alleges that shortly after filing the grievance, Defendant Price, in conjunction with all named Defendants, directed a campaign of concerted retaliation that included the filing of false misconduct charges and placement in dirty and/or cold cells. Plaintiff alleges the retaliation continued through his transfer from SCI – Greene to SCI – Fayette on December 4, 2008. Plaintiff theorizes that a "Code of Silence" exists throughout the DOC system whereby the filing of a grievance against one officer at one facility will result in retaliatory conduct by each officer or administrator who is charged with his care. [ECF No. 85-1, p. 43].

Plaintiff's claims as to each of the remaining Defendants include:

a) Defendant Price: First Amendment retaliation claim and Eighth Amendment "conditions of confinement" claim;

b) Defendant Workman: First Amendment retaliation claim and Eighth Amendment "conditions of confinement" claim;

c) Defendant Davis: First Amendment retaliation;

d) Defendant Eagle: First Amendment retaliation claim;

e) Defendant Leggett: First Amendment retaliation claim, Fourth Amendment invasion of bodily integrity claim;

f) Defendant Lesure: First Amendment retaliation claim, Fourth Amendment invasion of bodily integrity claim;

g) Defendant Bittner: First Amendment retaliation claim;

h) Defendant Cross: First Amendment retaliation claim;

i) State law conversion claim against Defendants Cross, Bittner, Gates, McIntyre, Varner, Coleman, and the DOC.

Discovery conducted to date, including Plaintiff's deposition,[1] interrogatories and requests for production of documents, fails to substantiate any of Plaintiff's claims and, instead, establishes the absence of any genuine issue of material fact which would preclude the entry of judgment in favor of each of the remaining Defendants.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir.1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered

---

[1] In his Response to Defendants' Statement of Material Facts not in Dispute, Plaintiff moves this Court to strike any reference to his deposition, contending that he was not provided advance notice of the deposition as required by Fed.R.Civ.P. 30(b)(1), that he was tired, having been woken from a deep slumber and that he was "under the influence of psychotropic drugs and partially incoherent." [ECF No. 92, p. 1]. This Court has reviewed the deposition transcript in detail and finds that Plaintiff answered each and every question appropriately and logically, and without any sign of incoherence. Prior to commencing questioning regarding his claims, Plaintiff was specifically asked if anything should preclude the taking of his deposition. While Plaintiff stated that he had taken Remeron, an antidepressant, and that he did not receive advance notice of the date of the deposition; he did not request to have the deposition rescheduled and answered in the affirmative when asked if he was able to give a deposition and whether he understood each of the preliminary questions he had been asked. [ECF No. 85-1, p. 8]. Accordingly, Plaintiff's Motion to Strike his deposition testimony is denied.

as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir.1990) (quoting Anderson, 477 U.S. at 251–52).

If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable ... or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249–50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed.R.Civ.P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv–A–Portion, Inc., 909 F.2d 1524, 1542 (3d Cir.1990).

## III. DISCUSSION

### A. Retaliation

Plaintiff alleges numerous instances of retaliation against Defendants Price, Workman, Davis, Eagle, Leggett, Lesure, Bittner and Cross. It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the United States Constitution, which is actionable under Section 1983. Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, the mere allegation of retaliation is insufficient to establish such a claim. In order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally

protected; (2) that he suffered "adverse action"[2] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Rauser, 241 F.3d at 333 (*adopting* Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The crucial third element, causation, requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503–04 (3d Cir. 1997)). Once a plaintiff has made his prima facie case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Rauser, 241 F.3d at 334 (*incorporating* Turner v. Safley, 482 U.S. 78, 89 (1987)); Verbanik v. Harlow, CIV.A. 09-448, 2012 WL 4378198 (W.D. Pa. Sept. 25, 2012).

With particular relevance to Plaintiff's claims for retaliation, a necessary predicate to liability is evidence of personal involvement in the alleged wrongs.  Personal involvement may be shown through contemporaneous personal direction, actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207–08 (3d Cir. 1988); *see also*, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir.1976). Mincy v. Klem, No. 07-CA-0790, 2012 WL 727591 (M.D. Pa. Mar. 6, 2012).

Finally, unsupported allegations are insufficient to establish personal involvement. A party opposing summary judgment must come forth with "affirmative evidence, beyond the

---

[2] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Verbanik v. Harlow, No. 09-448, 2012 WL 4378198 (W.D. Pa. Sept. 25, 2012) (quoting, Bailey v. Lawler, No. 07–2058, 2010 WL 5018825 (M.D. Pa. Aug. 11, 2010)).

allegations of the pleadings," in support of its right to relief. Pappas, 331 F. Supp.2d at 315; Fed. R. Civ. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–57(1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–89 (1986); see also Fed. R. Civ. P. 56(c), (e).

 In this case, Bracey fails to meet his burden with respect to each of the remaining Defendants and, as such, summary judgment in favor of each Defendant is appropriate. Mincy v. Klem, 1:07-CV-0790, 2012 WL 727591 (M.D. Pa. Mar. 6, 2012).

### 1. Defendant Price

Plaintiff alleges a First Amendment retaliation claim against Defendant Price arising out of Defendant Price's purported involvement in the issuance of a false misconduct report and a change in Plaintiff's restricted housing placement. Plaintiff alleges that the false misconduct report, cell change and thirty day loss of privileges occurred at Defendant Price's direction as retaliation for Plaintiff's grievance against Sergeant Anderson. In addition, Plaintiff contends that the timing of the misconduct and resulting punishment support a prima facie claim of retaliation, sufficient to require a jury trial. [ECF No. 89, pp. 4-7].

Defendants seek the entry of judgment in their favor as a matter of law, based on the lack of evidence, beyond pure speculation, connecting Defendant Price to any alleged acts of retaliation.

In support of his claim, Plaintiff alleges he filed his grievance against Sergeant Anderson on December 13, 2007, and that during the following week, Defendant Price "demanded" that Plaintiff drop the grievance. [ECF No. 85-1]. In making the demand, Plaintiff alleges Defendant Price threatened that if Plaintiff refused, "I'll make your life a living hell down there. Then he

told me that we don't like grievances or complaints filed. That's pretty much want he said."
[ECF No. 85-1, pp. 16-18, 26].

On January 3, 2008, Plaintiff received a misconduct report for submitting an obscene
Inmate Request Form to a female nurse on the medical staff. [ECF No. 89-4, p. 2]. The obscene
note [ECF No. 85-1, p. 139], bearing Plaintiff's name, was received on December 30, 2007.
Pursuant to DOC policy, an investigation was commenced and Plaintiff was moved from his
administrative custody cell to disciplinary custody housing. [ECF No. 89-1, p. 3; ECF No. 85-2,
pp. 2, 7]. Plaintiff alleges that as a result of his relocation, he lost television, radio, and
commissary privileges for thirty days. [ECF No. 89-1, p. 3]. Plaintiff alleges that his new cell
had feces in the toilet and that the in-cell water was shut off for three days. Plaintiff also
complains that during his three day pre-hearing confinement, he was deprived of cleaning
supplies and bedding.

The record shows that the hearing related to the obscene note was held on January 7,
2008, and resulted in the dismissal of the charges with a finding of "not guilty." [ECF No. 89-4,
p.3]. When questioned about the inference that he was left naked and without any hydration,
Plaintiff admits that he did have sufficient clothing and that he was served liquids three times a
day, with each meal. [ECF No. 85-1, pp. 41, 54, 55].

Plaintiff acknowledges that Defendant Price did not issue the false misconduct, nor was
he responsible for the investigation that followed. However, in support of his retaliation claim,
Plaintiff speculates that Defendant Price "contrived" with either an inmate or another guard to
create the obscene note, and, as a lieutenant, played a part in changing his cell location and
restricted housing status. [ECF No. 85-1, pp. 33-34]. Plaintiff's lack of evidentiary support for

his claim does not dissuade him, as he points to the timing of the misconduct report and its

issuance as  sufficient to present a jury question:

> Q:    How do you know this happened?
>
> A:    Because he told me.
>
> Q:    I'm going to make your life a living ---?
>
> A:    He told me we'll make your life a living hell down there.  And you're talking about only a couple of days later.  And it was just more coincidental that I charged Officer Anderson with this sexual harassment, then I'm turned around and charged with sexual harassment only a couple of days later, after they were refusing to withdraw the complaint.
>
> Q:    And so you put those together and you concluded it had to be Price?
>
> A:    Correct.
>
> Q:    Had to be Price who put some CO or sergeant up to it, to write this false – to forge your name?
>
> A:    He could have as well had a prisoner do it.
>
> Q:    He could have.
>
> A:    I mean, it could have been.  It's well known that they will tell you that they have rats or C-I-N-s as they call it.  They work for them.
>
> Q:    Right.
>
> A:    You know, they do things like that, give information, lie, ---
>
> Q:    Uh-huh (yes).
>
> A:    ---falsify things, agent provocateur.  The officers --- could have had the officers do it.  He could have did it himself.  But I'm sure he had something to do with it.

[ECF No. 85-1, pp. 33-34].  The only record evidence connecting Defendant Price to any of

these events, however, is his assignment as the reviewing Grievance Officer for Plaintiff's

original grievance against Sergeant Anderson and Plaintiff's subsequent grievance, filed on

January 25, 2008, regarding the loss of television, radio, and commissary privileges.    [ECF No. 89-1, p. 3].

Plaintiff has provided the Court with a partially legible letter wherein he sets forth his allegations related to his housing change.  [ECF No. 89-14].  Plaintiff acknowledges that his Administrative Custody status began on October 11, 2007.  Plaintiff states that on January 1, 2008, he was moved to a different cell block as a result of a "retaliatory misconduct," and was denied his previously approved privileges for television, radio and phone calls.  He complains that as of January 18, 2008, he was approved for radio by his Program Review Committee, but that "Sergeant Anderson refused to provide his radio and/or television." In addition he complains that Sergeant German (sp) denied him access to cable television service and thereby overruled PRC Deputy Coppozza, who approved the return of these privileges. Plaintiff acknowledges that he was provided an explanation that his temporary disciplinary custody cell was not wired with an active television cable or electrical outlets to power the radio. However, Plaintiff challenges the inability of the DOC to provide him an electrical outlet for his radio and requests that he be moved to a location where he could receive his "paid for" cable service.  Id.

Defendant Price was assigned the initial review of Plaintiff's grievance regarding his loss of privileges and seeking the return of cable television fees.  Defendant Price's response indicates that Plaintiff had been moved to a Disciplinary Custody cell as a result of the misconduct report, but that after the charge was dismissed a few days later, his privileges were restored to the fullest extent possible, including the return of all of his cell possessions.  In addition, Defendant Price explained there was insufficient bed space available to return him to an Administrative Custody cell after the hearing, and that Plaintiff's television and radio privileges

could not immediately be restored because of the lack of available wiring in his temporary Disciplinary Custody cell. [ECF No. 89-1].

Defendant Price's initial review was upheld by the DOC Chief Grievance Officer, who noted that, "At the time the misconduct in question was dismissed there were no open beds in AC status to move you to which made it necessary for you to remain in DC status until a bed was available." [ECF No. 89-13]. Prior to the final resolution of Plaintiff's appeal, Plaintiff's privileges were restored and Plaintiff was returned to housing in Administrative Custody. [ECF No. 89-13].

Because prisoner retaliation claims are "easily fabricated[ ] and ... pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted). Thus, in order to survive summary judgment on a retaliation claim, a prisoner must make out a prima facie case by adducing facts sufficient to show that he engaged in a protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter. George v. Walker, 535 F.3d 535, 538 (7th Cir. 2008); Thaddeus–X, 175 F.3d 378, 394 (6th Cir. 1999). To do this, a Plaintiff must come forward with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff has carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998).

Defendants do not challenge the first element of a prima facie case. Plaintiff, in filing his grievance against Sergeant Anderson, engaged in protected activity. See Bounds v. Smith, 430 U.S. 817, 821 (1977), *overruled in part by* Lewis v. Casey, 518 U.S. 343, (1996). As to the

second element, Plaintiff was transferred to a "hard cell" for three days during the investigation

of the misconduct. In changing his cell, Plaintiff lost radio and television privileges for

approximately one month. These deprivations appear objectively *de minimus* for an inmate

already confined to administrative custody. However, under existing law, his temporary change

in cell and concomitant loss of television and radio may be sufficient to require a fact finder to

determine whether the alleged retaliatory conduct was such as "to deter a person of ordinary

firmness" from exercising his First Amendment rights. Allah v. Seiverling, 229 F.3d 220, 225-6

(3d Cir. 2000); Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012). The "heart of the matter,"

therefore, is the third element of the prima facie case: the presence or absence of a causal link

between the protected activity undertaken by the plaintiff and the "adverse" action that he

experienced. In other words, the Plaintiff must show that the protected activity was a substantial

motivating factor in the state actor's decision to take the adverse action. Plaintiff's claim against

Defendant Price fails on this element.

Plaintiff correctly argues that direct proof of a retaliatory motive is not essential to make

out a prima facie case. See Harbin–Bey v. Rutter, 420 F.3d 571, 580 (6th Cir.2005); Murphy v.

Lane, 833 F.2d 106, 108 (7th Cir.1987) (per curiam). In some instances, circumstantial evidence

such as a temporal proximity between a protected act and an adverse action may suffice. See,

e.g., Westefer v. Snyder, 422 F.3d 570, 584 (7th Cir.2005); Thaddeus–X, 175 F.3d at 399.

However, the mere fact that an adverse action occurs after a grievance is filed is relevant, but not

dispositive. Booth v. King, 228 F. App'x 167, 172 (3d Cir. 2007) (while timing of the incidents

appears suspicious, this alone does not create a showing of retaliation); Robinson v. City of

Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997) (if "timing alone" is the evidence adduced to

establish the element of causation in a retaliation claim, the facts must be "unusually suggestive" of retaliatory motive).

The timing of the grievance does not aid Plaintiff's claim as Plaintiff has failed to offer any evidence that his relocation was connected to his grievances or that Defendant Price had a retaliatory motive so as to orchestrate the issuance of a false misconduct report.  First, there is no evidence that any DOC staff member and, in particular, Defendant Price, had a role in the creation of the obscene note that precipitated his prehearing confinement.  Second, there is no evidence that Defendant Price was aware of the obscene note or that he directed the issuance of a misconduct report. Third, there is no evidence that Defendant Price had a role in Plaintiff's move to a disciplinary custody cell for the duration of a pre-hearing investigation.

Plaintiff's speculation that Defendant Price orchestrated each of these actions is belied by his letter to the Dan Davis, Prison Grievance Coordinator, wherein he again alleges his suspicion that the answer to his television and radio issues lies not in the absence of wiring, and not with Defendant Price, but in the actions of Sergeant Anderson.  The failure to provide affirmative evidence of a causal connection between Defendant Price and the alleged retaliation is fatal to his claim. See, Brooks v. DiGuglielmo, Civ. No. 05-4588, 2008 WL 5187529, at *13 (E.D.Pa. Dec. 9, 2008) ("A plaintiff must come forward with more than general attacks upon the defendants' motivations and must produce affirmative evidence of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive.") (citations omitted).

Even if Plaintiff's speculation, coupled with some temporal proximity gave rise to an inference of retaliatory motive, "[o]nce a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison

officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>Rauser</u>, 241 F.3d at 334. In determining whether the proffered justification is sufficient, "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security" <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979).

Defendants have provided evidence that regardless of Plaintiff's grievance against Sergeant Anderson, he would have been relocated as a result of standard DOC policy requiring an investigation of the obscene note to a female staff member bearing Plaintiff's name. Defendant Workman has indicated that any inmate accused of similar behavior would immediately be subject to Pre-Hearing Confinement pending an investigation. [ECF No. 85-2, pp. 5-7]. The need for institutional security under these circumstances is patent and sufficiently justifies the *de minumus* impact upon Plaintiff. Further, the record is clear that Plaintiff's loss of television and radio privileges for 30 days resulted from the lack of an open cell in the administrative custody housing block and was not the result of some retaliatory motive. The absence of adequate cell space is a legitimate penological reason for the temporary loss of television and radio privileges.

To the extent Plaintiff also alleges a retaliation claim against Defendant Price for coordinating harassment by other staff members in the form of verbal abuse, abusive escorts and/or strip searches, Plaintiff has failed to adduce any evidence is support of these claims or connect any of these alleged incidents to a grievance. In the absence of any material issue of fact with regard to Plaintiff's First Amendment retaliation claims against Defendant Price, Defendant Price is entitled to the entry of judgment in his favor as a matter of law.

### 2. Defendant Workman

Plaintiff's retaliation claim against Defendant Workman fares no better, as it too is based on unsubstantiated speculation. Defendant Workman is alleged to have been the Captain in control of the RHU who "supported all changes" on the day Plaintiff was moved from his administrative custody cell to the disciplinary custody cell. Plaintiff acknowledges that while there is no evidence that Defendant Workman knew of the grievance related to Sergeant Anderson, Plaintiff believes Workman retaliated against him by failing to return Plaintiff to his administrative custody cell, which resulted in the temporary loss of television, radio and commissary privileges. [ECF No. 85-1, pp. 45-49].

> Q:  How do you know that Workman knows that you were moved into that cell because of your protected activity?
>
> A:  Well, I don't know if he knew that it was because of my protected activity. But he knew that it was a misconduct issue, that I was not DC status, I was AC status and I was still put in a DC cell. So that would raise a lot of questions.
>
> Q:  So you don't know whether Workman knows that you had filed the grievance/complaint on the sexual harassment?
>
> A:  No.

[ECF No. 85-1, pp. 50-51]. Plaintiff's speculation is insufficient as a matter of law to maintain a claim. Plaintiff candidly admits there is no evidence of Defendant Workman's personal involvement in either the underlying grievance, the issuance of the misconduct that resulted in the cell change, or the decision to place Plaintiff in a different cell block during his prehearing confinement. [ECF No. 85-2, pp. 2, 7]. Accordingly, Plaintiff has not adduced sufficient evidence to maintain a First Amendment retaliation claim against Workman and summary judgment is appropriate. See Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167

F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

### 3. Dan Davis

Plaintiff alleges that Defendant Davis retaliated against Plaintiff by remanding an appeal of the Anderson grievance to Defendant Price for additional investigation. Plaintiff's contends remand was inappropriate and resulted in restricting his right to final review by the DOC. Plaintiff's claim is not supported by the grievance record, which leaves no material issues of fact.

The record shows that Plaintiff appealed Defendant Price's Initial Review Response of the Anderson grievance to Superintendent Folino, complaining that Defendant Price's investigation was "biased and unilateral," and failed to address the issue of sexual harassment. [ECF No. 85-1, pp. 143 – 144]. Defendant Davis, acting as Superintendent Folino's Assistant/Grievance Coordinator, remanded the grievance and requested that Defendant Price conduct a further review of Plaintiff's sexual harassment and abusive language allegations. [ECF No. 85-1, p. 145]. This additional review led to Price's second report, prepared on January 8, 2008, which contained additional information from the Plaintiff and the officers involved, and addressed Plaintiff's admissions regarding his apparent inappropriate behavior during the underlying strip search. [ECF No. 85-1, p. 147]. Plaintiff filed an appeal from this report and on January 10, 2008, Superintendent Folino upheld Defendant Price's determination that Sergeant Anderson had not sexually harassed Plaintiff. [ECF No. 85-1, p. 150]. Plaintiff subsequently appealed to the DOC Secretary's Office of Inmate Grievances and Appeals, but omitted certain paperwork from his appeal packet, which resulted in the eventual dismissal of his appeal.

Plaintiff seeks to overcome this error by claiming that in remanding the grievance, Defendant Davis retaliated against Plaintiff by somehow preventing the filing of a final appeal to the DOC. [ECF No. 85-1, pp. 73, 77]. Plaintiff is wrong.

The evidence supplied to the Court shows that Defendant Davis considered Plaintiff's allegations, and that he agreed with Plaintiff's contention that additional information was needed with regard to his claim of sexual harassment. Davis then remanded the grievance for additional fact-finding. Remanding, however, does not support a claim of retaliation with regard to the underlying grievance. Simply stated, courts have consistently recognized that participation in the after-the-fact review of a grievance or appeal is not enough to establish contemporaneous personal involvement to sustain a retaliation claim. Croom v. Wagner, 2006 WL 2619794, at *4 (E.D.Pa. Sept.11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corr., 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement); Pressley v. Blaine, No. 01–2468, 2006 U.S. Dist. LEXIS 30151, at *17 (W.D. Pa. May 17, 2006) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern." (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D.Pa.1983))). Furthermore, it is clear that any disruption to Plaintiff's appeal process resulted solely from his failure to include the January 10, 2008, Superintendent's denial letter in his appeal packet. [ECF No. 150-153]. Accordingly, Defendant Davis is entitled to the entry of judgment in his favor as a matter of law.

### 4. Defendant Eagle

Plaintiff has asserted a claim against Defendant Eagle for retaliation also arising out of Plaintiff's November 2007 grievance against Sergeant Anderson and his January 2008 grievance against Defendant Price. [ECF No. 35, p. 5]. Plaintiff claims that seven months after filing the grievance against Price, on July 2, 2008, while being escorted from the mini-law library, Defendant Eagle "badgered" Plaintiff as to the issues he was researching in the library and his understanding that Plaintiff had filed grievances against Sergeant Anderson and Lieutenant Price. Plaintiff further alleges that he responded to Defendant Eagle, claiming that Defendant Eagle's questions constituted harassment, to which Defendant Eagle responded, "You think this is harassing, I show you harassing you punk ass crybaby." Plaintiff alleges he then received a false misconduct report accusing him of threatening an employee and refusing to obey an order. Id. Plaintiff also alleges that he was "exonerated" of the misconduct charges, which he asserts were dismissed with prejudice due to Defendant Eagle's lack of credibility.

Defendant seeks the entry of judgment as a matter of law on this claim because the record fails to support Plaintiff's version of events. The documentation supplied reveals that on July 2, 2008, Plaintiff was ordered to back out of his cell so he could be escorted to the law library. Plaintiff refused, threatened Defendant Eagle, and received a misconduct report for threatening a staff member. [ECF No. 85-2, pp. 12 – 29). Because of the nature of the misconduct, Plaintiff was moved from his administrative custody cell to a disciplinary custody cell, pending his hearing. At the initial hearing, the misconduct was dismissed without prejudice for an unspecified procedural error. The misconduct was reissued on July 9, 2008, and the hearing was held on July 14, 2008.[3] Plaintiff complained that in rewriting the misconduct, additional details

---

[3] Pursuant to DOC Policy DC-ADM 801.4A.6, the "Hearing Examiner may dismiss any misconduct charge without prejudice, to permit recharge without determination of guilt or innocence."

were added which made the misconduct less credible (plaintiff points to the fact that on the initial report, Defendant Eagle indicated that Plaintiff had received one verbal order to back out of his cell, but the second report indicates that he was given two orders to back out of his cell). At the conclusion of the hearing, the Hearing Examiner made no factual findings and dismissed the misconduct with prejudice.

Plaintiff subsequently filed a grievance regarding the misconduct, alleging that the misconduct was retaliatory and that he was deemed "not guilty" because the misconduct was dismissed. The grievance was remanded for further investigation into Plaintiff's claims, but was upheld at each stage of the appeal process based upon the findings of the grievance investigation and the absence of any evidence linking the issuance of the misconduct to retaliation for any past grievance directed at Defendant Eagle or any other staff member.

As with each of Plaintiff's claims of retaliation, Plaintiff has failed to support his allegations of retaliation as to Defendant Eagle so as to establish a material issue of fact requiring jury consideration. First, Plaintiff has failed to provide affirmative evidence that the misconduct report was false. The Hearing Examiner's disposition does not indicate whether the charges were true or false or his rationale in simply dismissing the charges with prejudice. In addition, other than Plaintiff's self-serving statement, there is no evidence of a causal connection between his grievances nine months earlier against Sergeant Anderson and/or Defendant Price, and Defendant Eagle's issuance of a "false" misconduct. This lack of evidence is fatal to Plaintiff's retaliation claim. See, Fiore v. Holt, 435 F. App'x 63, 67 (3d Cir. 2011); Brooks v. DiGuglielmo, Civ. No. 05-4588, 2008 WL 5187529, at *13 (E.D.Pa. Dec. 9, 2008) (citations omitted) ("A plaintiff must come forward with more than general attacks upon the defendants'

motivations and must produce affirmative evidence of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive").

Plaintiff also has not established that he suffered "adverse action" sufficient to give rise to a constitutional violation. The evidence indicates that Plaintiff was moved from administrative custody status to disciplinary custody status for 12 days, which Plaintiff claims resulted in the loss of television, radio and commissary privileges. [ECF No. 85-2, pp. 11 – 15, 24]. Given Plaintiff's existing status as an inmate already confined to administrative custody, the twelve day loss of television, radio and commissary privileges for purposes of permitting DOC officials to hold a hearing and conduct an investigation into Plaintiff's alleged threatening behavior does not rise to constitutionally cognizable claim. Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. See Thaddeus-X, 175 F.3d at 398; Crawford-El v. Britton, 93 F.3d 813, 826 (D.C.Cir.1996) (en banc), rev'd on other grounds, 523 U.S. 574 (1998); Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech [is] always actionable...."). This objective inquiry is "not static across contexts," but rather must be "tailored to the different circumstances in which retaliation claims arise." Thaddeus-X, 175 F.3d at 398. In this instance, if the misconduct was indeed false, and issued in retaliation for a past grievance filed against another corrections officer, Plaintiff's temporary loss of television, radio and commissary privileges is simply insufficient to be considered constitutionally "adverse."

Finally, even if Plaintiff could establish that the misconduct was issued in retaliation for his earlier grievances against Sergeant Anderson or Defendant Price, the evidence indicates that Plaintiff was placed in disciplinary custody housing for a legitimate penological purpose. His

change in housing occurred pursuant to DOC policy, to permit an investigation into the misconduct charge of threatening a staff member, to determine the extent of the threat that Plaintiff presented to security of the facility, and to schedule a hearing of the matter. [ECF No. 89-15, p. 2]. As indicated by Defendant Workman, the change in placement would have been made absent Plaintiff's earlier grievances for reasons reasonably related to a legitimate penological interest. Rauser v. Horn, 241 F.3d 330, 334 (3d Cir.2001). Given the absence of evidence sufficient to establish a causal link between Plaintiff's grievances some seven to eight months earlier, and the misconduct issued for threatening a staff member, Defendant Eagle is entitled to the entry of judgment in his favor as a matter of law.

### 5. Defendants Lesure and Leggett

On December 4, 2008, Plaintiff was transferred from SCI – Greene to SCI – Fayette. Because he had been in Administrative Custody at SCI – Greene, upon Plaintiff's arrival at SCI – Fayette, he was placed into Administrative Custody on L Block for 30 days, pending review for a possible transfer to general population. [ECF No. 89-17]. Plaintiff alleges that he was immediately retaliated against at his new facility for past grievances filed at SCI – Greene because instead of being placed in an Administrative Custody cell, he was placed in a Psychiatric Observation Cell, equipped with a camera, an in-cell shower and, a rear door providing access to an attached exercise yard. Plaintiff alleges that the rear door was not sealed and a strong draft of cold air made the cell "torturously cold." [ECF No. 35, pp. 5-6, ¶ 60].

Plaintiff offers no evidentiary support for his claim that his housing placement was the result of any alleged retaliatory motive, and no evidentiary support that either Defendant Lesure or Leggett had knowledge of his prior grievances. There is also no evidentiary support for Plaintiff's claim regarding the alleged intolerably cold condition of his cell on the days in

question or his claim that the camera in his cell was turned on and functioning. Instead, the evidence supplied to the Court indicates that as of the date of Plaintiff's transfer, no other Administrative Custody cells were available and, on January 5, 2008, after a routine thirty days of observation for administrative custody transfers, Plaintiff was moved to general population. [ECF No. 85-2, pp. 31-38, 44-47]. Because there is no evidence that the filing of a grievance was a substantial or motivating factor in Plaintiff's cell placement, or that the move was unconstitutionally retaliatory, summary judgment will be granted in favor of Defendants Leggett and Lesure with respect to Plaintiff's cell placement retaliation claim.

Plaintiff alleges a second retaliation claim against Defendant Leggett arising out of Defendant Leggett's alleged authorization of a misconduct resulting from Plaintiff's failure to obey a direct order to turn on his cell light. The misconduct was issued by Defendant Bittner, but was later dismissed after the receipt of testimony that the cell light control switch had been turned off in the control room. Because the misconduct was dismissed, Plaintiff suffered no adverse action. [ECF No. 85-2, pp. 49-51]. In the absence of any adverse action, Plaintiff cannot maintain a prima facie retaliation. Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011) (summary judgment properly entered where retaliation claim predicated upon misconducts which were later dismissed and therefore lacking "adverse action"). Accordingly, summary judgment is appropriate in favor of Defendant Leggett as to the second retaliation claim against him, which is hereby dismissed.

### 6. Defendant Bittner

Plaintiff claims that Defendant Bittner, a guard at SCI – Fayette repeatedly retaliated against him by issuing false misconducts, searching his cell and confiscating legal materials.

The first claim arises out of the cell light switch incident, which resulted in the dismissal

of the misconduct charges at the hearing on the matter. Because no adverse action was suffered, Plaintiff's assertions do not support a claim for unconstitutional retaliation. Brightwell, supra.

Plaintiff next claims that on December 16, 2009, he filed his initial Complaint in this matter, naming Defendant Bittner as a Defendant. On February 27, 2010, Defendant Bittner conducted a routine cell search and located the Complaint. Plaintiff alleges that Defendant Bittner read the Complaint and discovered for the first time that he had been named as a defendant. Plaintiff claims that as a result, Defendant Bittner confiscated certain legal materials to prevent Plaintiff from pursuing his legal action and then issued a vague confiscation slip so as to prevent Plaintiff from proving that the legal materials were in his lawful possession. [ECF No. 35, pp. 6 – 8; ECF No. 89-23]. Plaintiff next alleges that to cover his actions, Defendant Bittner issued a false misconduct against Plaintiff for the possession of contraband. Id.

The investigation revealted that the seized legal materials either did not belong to Plaintiff or were unauthorized contraband. [ECF No. 89-23 – 89-33]. At the subsequent disciplinary hearing, Defendant Cross concluded that based upon the evidence presented, Plaintiff was in in violation of DOC policy related to the possession of contraband. Superintendent Coleman upheld the confiscation of materials and the resulting misconduct, noting:

> A cell search was conducted on 2-27-10 due to your claims of glass in your food. Items were confiscated and you were issued a confiscated items receipt. Security reviewed these confiscated items and found that the four soft back books had (1) two inmate numbers scratched off (2) belongs to SCI Fayette Law Library as identified on the book (3) and (4) had no name or number. The hard back book had no inmate name or number. The paperback journal had the name of inmate Lionel Wesley EV-8546. The piece of paper had an inmate name and number and you cannot possess this. All books were appropriately confiscated as contraband and will be destroyed in accordance with policy with the exception of the book that belongs to the law library – it will be returned. The confiscated items receipt did not say a misconduct was issued because it wasn't issued until an

> investigation was conducted. You did receive misconduct # A757731 for
> possession of contraband.

[ECF No. 85-2, p. 72].

The filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited "retaliation" unless the report is, in fact, false. In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance. See Harris–Debardelaben v. Johnson, 121 F.3d 708 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998), *cert. denied*, 525 U.S. 907 (1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), *cert. denied*, 515 U.S. 1145 (1995). See also Alexander v. Fritch. 396 F. App'x 867, 874 (3d Cir. 2010) (holding that "because there was evidence to support the hearing examiner's finding of guilt, there was a legitimate penological reason for the charge and punishment"); Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); Allah v. Al–Hafeez, 208 F. Supp.2d 520 (E.D. Pa. 2002).

In this case, Defendant Bittner has presented sufficient evidence establishing that Plaintiff's misconduct for possession of contraband was issued because, in fact, he possessed contraband in the form of materials that did not belong to him. Plaintiff challenged the misconduct on substantive and procedural grounds at least four times and yet the disposition was upheld by the Hearing Examiner, the Program Review Committee, Superintendent Coleman, and the Department of Corrections Chief Hearing Examiner. [ECF No. 85-2, pp. 58-65].

Defendants have met their burden of showing that Plaintiff would have been issued the misconduct for reasons reasonably related to penological interests even if Plaintiff had not filed a Complaint naming Defendant Bittner as a party. See Grunthal v. Tempus, No. 09–CV–1338, 2010 WL 4639049, at *7 (W.D. Pa. Nov. 8, 2010) ("Although Plaintiff disagrees with the factual findings of the hearing examiner, they were upheld after pursuing all levels of review. Thus, Defendants have established that the same action would have been taken in the absence of any protected activity for reasons related to the legitimate penological goal of maintaining order in the institution."). Accordingly, there is no issue of fact requiring jury resolution as there is no constitutional violation of Plaintiff's First Amendment rights. The Motion for Summary Judgment as to Defendant Bittner is granted.

### 7. Defendant Cross

Plaintiff's claim against Defendant Cross arises out of her role as the Hearing Examiner with regard to the confiscation of the legal materials that were deemed to be contraband. Plaintiff alleges that Defendant Cross retaliated against him by accepting Defendant Bittner's version of events and finding him guilty of possession of contraband. At the misconduct hearing, Defendant Cross dismissed two of the three charges against Plaintiff, Charge 44 – Loaning or Borrowing Property and Charge 45 – Failure to Report the Presence of Contraband. However, based upon the evidence presented, Defendant Cross found Plaintiff guilty of Charge 36 – Possession of Contraband.

Defendants correctly argue that because Defendant Cross had evidence of Plaintiff's improper possession of contraband to justify the finding of guilt on the remaining charge, it cannot be said that the disciplinary finding was retaliatory. There is no genuine issue of material fact that Defendant Cross's disciplinary action "was reasonably related to legitimate penological

interests," and that Plaintiff would have been disciplined notwithstanding his constitutionally

protected conduct. Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (citing Turner v.

Safley, 482 U.S. 78, 90 (1987)). The Motion for Summary Judgment as to Defendant Cross on

Plaintiff's First Amendment retaliation claim is granted.

> **B.**      **Eighth Amendment Claims Against Defendants Price and Workman**

Plaintiff has alleged an Eighth Amendment conditions of confinement claim against

Defendants Price and Workman arising out of his transfer to a "deplorable" disciplinary cell

while awaiting his hearing on the January 3, 2008, misconduct report issued for sending an

obscene note to a female nurse on the medical staff. [ECF No. 89-4, p.2]. As to this claim,

Plaintiff alleges:

> 30.      Plaintiff was moved to cell FO within the RHU. The cell was in shockingly deplorable conditions. There was feces in the toilet and corner of cells what smelled or urine of lower walls and floors and the water in-cell was cut off (e.g. hot/cold drinking water and toilet). Plaintiff was also denied toilet paper & mattress; personal/legal property; soap; toothpaste/toothbrush; bed linen; etc.
>
> 30.      Plaintiff made numerous requests to unidentified officers for toilet papers and water to be cut on, which was continuously denied. Even being told by an unidentified officer "Drink out the toilet like a dog. Price already briefed us about you."
>
> 31.      Plaintiff was forced to smell his squalor as well as feces already in toilet, where he was unable to flush or use toilet. Plaintiff was maliciously left in this state and without life's basic necessitites for three days.

[ECF No. 35, pp. 3-4 (numbering, spelling and grammar errors in original)].

Defendants seek the entry of summary judgment as a matter of law because Plaintiff has

not produced any evidence that either Defendant Price or Defendant Workman participated or

acquiesced in the decision to move Plaintiff to the cell at issue. [ECF No. 83, p. 22]. Discovery

in this action reveals that neither Defendant Price nor Defendant Workman played a role in the

decision to move Plaintiff or, indeed, the choice of his cell. [ECF No. 85-1, p. 133, 85-2, p. 7]. Plaintiff counters, speculating that because Defendant Price admits asking Plaintiff to withdraw the Anderson grievance, there is sufficient circumstantial evidence to establish his involvement or direction in the move. [ECF No. 89, pp. 19-21]. Similarly, with regard to Defendant Workman, Plaintiff asserts that because Workman admits that he would have authorized the move to disciplinary custody under the circumstances presented, Workman acquiesced in the violation of Plaintiff's rights. Id.

As a matter of law, the evidence supporting Plaintiff's claims against both Defendants is insufficient to establish "personal involvement" in the alleged wrongs. Plaintiff fails to point to any evidence indicating that either Defendant directed Plaintiff's housing in the cell in question or knew of the cell conditions. The absence of evidence of personal involvement is fatal to his Section 1983 claims against both Defendants. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (when a plaintiff brings a Section 1983 claim against a defendant in his or her individual capacity, the plaintiff must establish that the defendant had "personal involvement" in the alleged wrongs).

Even if Plaintiff adduced evidence of Defendants' involvement in the choice of cell, the conditions alleged do not state a claim for a violation of Plaintiff's Eighth Amendment rights. In order to succeed in an Eighth Amendment conditions of confinement claim, Plaintiff must demonstrate both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

With respect to the first element, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's

necessities." Id. at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8–9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions—considered alone constitutionally insufficient—may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise...." See Wilson v. Seiter, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution ... does not mandate comfortable prisons." Wilson, 501 U.S. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

With respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981). This requires a court to determine, subjectively, whether the officials acted with a sufficiently culpable state of mind. Id.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Farmer, 511 U.S. at 838. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. A

trier of fact may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. Id. at 842.

The most serious of Plaintiff's claims involves his placement in a dry cell. When a prisoner is placed in a dry cell and is not provided *any* access to fluids, the United States Court of Appeals for the Third Circuit has found that the deprivation is "sufficiently serious" and may in some circumstances demonstrate "deliberate indifference" to sustain a claim. Collier v. Martinez, 474 F. App'x 870, 874 (3d Cir. 2012). However, the Court specifically noted, "If he were to have had access to adequate hydration during the period in question, *even in conjunction with meals he otherwise did not desire to eat, his claim would necessarily fail, as he would not be able to show that the complained of deprivation was 'sufficiently serious.'"* Id. at n.4 (italics added). In the case at issue, Plaintiff has testified that he was provided juice with each of his meals. [ECF No. 85-1, p. 40]. There is no evidence that the fluids provided were inadequate so as to result in dehydration and Plaintiff admits that he was visited by medical personnel each of the three days his in-cell water was shut off because of his pre-hearing disciplinary custody status. Id. at 41, 54. Under these circumstances, the fact that Plaintiff's in-cell water was turned off does not present a "sufficiently serious" deprivation to support an Eighth Amendment claim.

Plaintiff also complains that the toilet in his cell contained feces, and that he was exposed to the smells of feces and urine for three days. Plaintiff alleges he was deprived of his bedding and cleaning materials for three days. None of these deprivations or conditions, however, supports an Eighth Amendment claim. Compare, Qawi v. Howard, 2000 WL 1010281, *3 (D. Del. July 7, 2000) ("For example, in [Smith v.] Copeland [, 87 F.3d 265, 268 (8th Cir.1996) ], the Eighth Circuit Court of Appeals held that an inmate's confinement in a cell for four days with an overflowing toilet, during which time he was 'made to endure the stench of [his] own feces

and urine,' did not rise to the level of an Eighth Amendment violation."); <u>Davis v. Scott</u>, 157 F.3d 1003, 1004 (5th Cir.1998) (inmate being placed in cell that was "just filthy with blood on the walls and excretion on the floors and bread loaf on the floor" for three days did not meet the objective component of the Eighth Amendment) (some internal quotes omitted).

In addition, other than Plaintiff's self-serving statements that he verbally complained to at least 20 DOC employees over the course of the three days, the record is silent as to whether Defendants Price or Workman knew about the alleged conditions of Plaintiff's cell, or if they did, when they were made aware of it and how long thereafter the conditions were permitted to exist. [ECF No. 85-1, p. 42]. Plaintiff does not point to any grievances related to the conditions of his cell or to potential dehydration because his in-cell water was turned off. Instead, the grievances provided by both the Plaintiff and the Defendants indicate that Plaintiff was upset that his television, radio and commissary items had not been returned after the obscene note-related charges were dismissed. [ECF No. 89-1, p. 3; 89-13; 89-14]. In the absence of any evidence that either Defendant Price or Defendant Workman were aware of the allegedly inhumane cell conditions, Plaintiff has failed to raise an issue of fact regarding the subjective knowledge required for an Eighth Amendment conditions of confinement claim. Consequently, in the absence of any evidence giving rise to an issue fact, Defendants Price and Workman are entitled to summary judgment as a matter of law.

## C. Fourth Amendment Privacy Claim

Plaintiff claims that his Fourth Amendment rights protecting his expectation of "bodily privacy" were violated when he placed in a Psychiatric Observation Cell equipped with an in-cell camera upon his transfer to SCI – Fayette. Plaintiff alleges that because the cell was equipped with an in-cell camera, he was viewed in the nude on a constant or continuous basis, resulting in

the violation of his right to bodily privacy under the Fourth Amendment. [ECF No. 89, pp. 18-20]. Defendants move for the entry of summary judgment as a matter of law, contending that Plaintiff has presented no evidence that the camera was ever turned on and, in any event, given that Plaintiff has testified he was fully dressed except when using the toilet or showering, if the camera was operational, any incidental or limited viewing of Plaintiff while naked is insufficient as a matter of law to give rise to a violation of Plaintiff's Fourth Amendment or Eighth Amendment rights. [ECF No. 83, pp. 18-20]. In addition, Defendants argue that in the absence of evidence that Plaintiff was ever viewed by a member of the opposite sex, the minimal intrusion of being viewed by members of the same sex while showering is insufficient to maintain a Fourth Amendment claim.

The United States Constitution does not mandate that prisons which house prisoners convicted of serious crimes must be completely free of discomfort and affronts to a prisoners' dignity. See, Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Consequently, a prisoner's right of privacy exists only so far as it is not fundamentally inconsistent with prisoner status or incompatible with the legitimate objects of incarceration. Pell v. Procunier, 417 U.S. 817, 822 (1974). Similarly, the state may restrict or withdraw a prisoner's rights to the extent necessary to further the correctional system's legitimate goals and policies. Hudson v. Palmer, 468 U.S. 517, 524 (1984); Bell v. Wolfish, 441 U.S. at 545–46. Institutional security has been recognized as chief among the state's legitimate goals. Hudson v. Palmer, 468 U.S. at 524; Bell v. Wolfish, 441 U.S. at 547–48. Occasional viewing of inmates while showering or using toilet facilities has been held to be appropriately within the parameters of maintaining institutional security and therefore, constitutional.

In Timm v. Gunter, 917 F.2d 1093 (8th Cir. 1990), *cert. den*., 501 U.S. 1209 (1991), a class of inmates at an all-male maximum security institution complained that their constitutional right to privacy had been violated when they were "viewed [by female guards] while partially or totally nude while showering, using toilet facilities, dressing and undressing, and sleeping." Timm, at 1097.  The United States Court of Appeals for the Eighth Circuit, applying Turner v. Safley, 482 U.S. 78, 89-90 (1987), concluded the inmates were not subject to "constant, intrusive" observation and that whatever "minimal intrusions" the inmates faced "were outweighed by institutional concerns for safety and equal employment opportunities." Id. at 1102.

Similarly, in Johnson v. Pa. Bureau of Corrections, 661 F. Supp. 425, 435 (W.D. Pa., 1987), a male inmate claimed a violation of his right to privacy when female guards viewed him unclothed while showering and using the toilet "between ten and more than one hundred times." Id., at 428. Ultimately, the court determined the intrusions in Johnson did not rise to the level of a privacy violation: "[W]hile plaintiffs' evidence does indicate the possibility of routine observations, it is the number of actual viewings which is relevant, not the potential for such observation. Aside from plaintiffs' own allegations, no evidence indicates that female guards regularly view plaintiffs or any other prisoners when such individuals are naked ..." Id. at 435 (internal citations omitted) (emphasis added).

Plaintiff has produced no evidence to support his claim that during the thirty days he was housed in an observation cell, he was regularly viewed naked while showering, or while using the toilet, or that his cell placement resulted in more observations than would have routinely occurred had he been placed in an Administrative Custody cell, where he would have used a cell block shower stall. Plaintiff's evidence of alleged constant intrusive viewing is the issuance of a

single misconduct received for covering the camera lens. [ECF Nos. 89, p. 18; 89-28]. This evidence establishes only Plaintiff's unauthorized tampering with prison security equipment and is insufficient to show that the camera was operational and monitored continuously to routinely view Plaintiff while showering.

The right to privacy implicated by the Fourth Amendment in a prison context has been expressed in terms of guards viewing or conducting strip searches on prisoners of the opposite sex, or where the forced observation in front of guards of the same sex is intended to cause humiliation. See Byrd v. Maricopa County Sherriff's Dept., 629 F.3d 1135 (9th Cir. 2011) (cross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment); Canedy v. Boardman, 16 F.3d 183 (7th Cir. 1994) (inmate entitled to reasonable religious accommodation to prevent unnecessary visual strip search by female guards); Solan v. Ranck, No. 06-CV-0049, 2007 WL 4111424 (M.D. Pa. 2007) aff'd 326 F. App'x 97 (3d Cir. 2009)(allegations that inmate was paraded naked from shower to cell in front of 100 prisoners and guards stated a claim under the Fourth Amendment).

Plaintiff has produced no evidence that he was viewed by female guards or DOC staff members or was observed in a manner to cause humiliation as occurred in Solan, supra. Accordingly, summary judgment will be granted in favor of Defendants Leggett and Lesure with respect to his Fourth Amendment privacy claim.

**D.  State Law Claims for Conversion and Destruction of Personal Property**

Plaintiff's remaining claims arise under Pennsylvania state law for the conversion and destruction of his property, which was confiscated as contraband and as "property of another" in the February 27, 2010, routine cell search. Plaintiff claims Defendant Cross, as Hearing Examiner, was negligent by failing to provide Plaintiff with an opportunity to prove the books

belonged to him and that this negligence resulted in the destruction of his property. Plaintiff further alleges that Defendants Bittner, Gates, McIntyre, Varner, Coleman, and the DOC each participated in the unjustified confiscation of his property, resulting in its conversion and destruction.

As an initial matter, to the extent Plaintiff attempts to allege that his Fourteenth Amendment rights to due process were violated in the context of the confiscation of his property, the Supreme Court of the United States has held that meaningful post-deprivation remedies for such a loss provide sufficient due process for negligent deprivations of property, Parratt v. Taylor, 451 U.S. 527, 530 (1981), and intentional deprivations of property, Hudson v. Palmer, 468 U.S. 517, 533 (1984); Further, the United States Court of Appeals for the Third Circuit has held that the Department of Correction's grievance procedure pursuant to DC–ADM 804 provides an adequate post-deprivation remedy which forecloses any due process claim, see McEachin v. Beard, 319 F.Supp.2d 510, 514–15 (E.D. Pa. 2004) (citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000)).

Plaintiff's post-deprivation remedy consists of pursuing his state conversion claim. See Crosby v. Piazza, 465 F. App'x 168, 172 (3d Cir. 2012) (holding that to the extent an inmate "is dissatisfied with the outcome of the administrative [grievance] process, he may still file a state court tort action"); Reavis v. Poska, 2010 WL 2511379 at *21–22 (W.D.Pa.2010) ("Plaintiff, cannot as a matter of law, make a claim under the Fourteenth Amendment for a deprivation of property without due process" because the DOC's "internal grievance procedure and the availability of a state tort suit in state court provide adequate post deprivation remedies.").

However, because judgment shall be entered as to each of Plaintiff's claims arising under federal law, the Court declines to exercise jurisdiction over Plaintiff's conversion claim. A

federal court may, in its discretion, decline to exercise jurisdiction over pendant state law claims in four circumstances. 28 U.S.C. § 1367(c). The one circumstance relevant here is when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the Court has entered judgment as to all federal claims, the Court also declines to exercise supplemental jurisdiction over Plaintiff's pendant state law conversion claim.

## IV.    CONCLUSION

For the foregoing reasons, the motion for summary judgment [ECF No. 82] is granted. The Court declines jurisdiction over Plaintiff's remaining state law claim for the destruction and alleged conversion of his property, which is therefore dismissed without prejudice. An appropriate Order follows.

## <u>ORDER</u>

AND NOW, this 3rd day of December, 2012, it is hereby ORDERED that the Motion for Summary Judgment (ECF No. 82) filed by the Defendants is GRANTED. Plaintiff's remaining state law claims for the destruction and alleged conversion of his property are dismissed without prejudice.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within

thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk

of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.


/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


Dated: December 3, 2012


cc:    All counsel of record by Notice of Electronic Filing

      Corey Bracey
      GS-4754
      SCI Smithfield
      Box 999, 1120 Pike Street
      Huntingdon, PA 16652